**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Civil No. 1:11-CV-1964** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **JERRY GOSS,** | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

This is a straightforward collection action. It is a case which tells the story of Jerry Goss, a man who has enjoyed the benefits of more than $100,000 in student loan benefits over much of the past two decades. It is the story of a student loan borrower who has not repaid a single cent of what he has owed since 1997. It is–incredibly– the story of a delinquent debtor who after decades of delinquencies demands that his debts be forgiven.

This action is brought by the United States of America against Jerry Goss, a chiropractor from Hunlock Creek, Pennsylvania who borrowed a substantial amount of money to finance his undergraduate and professional education, and subsequently defaulted on his repayment obligations after he consolidated a number of these loans through a federal student loan consolidation program. There is absolutely no dispute

that Goss has enjoyed the benefits of these loans over the past two decades but has failed to repay his loans.  On these undisputed facts, the United States has now moved for summary judgment on its claims, seeking a judgment in the amount of $253,591.87 in principal and interest accrued through July 29, 2011.

For his part, Goss opposes the motion, but offers no genuine, substantial or factual basis for declining to pay this debt.  Instead, Goss asserts that he is entitled to summary judgment in his favor and insists that the court should enter judgment in his favor discharging this unpaid debt entirely.[1]  In support of this extraordinary demand, Goss has asserted an unsupported and puzzling claim that he is not obligated to repay his loans at this time because, years ago, an unidentified individual with the United States Department of Education allegedly told Goss that he was not required to make payments until an unspecified issue with his loan consolidation was cleared up, or addressed to Goss's satisfaction.  Goss otherwise defends his failure to repay his loans through a number of elliptical and opaque assertions that are neither

---

[1] Goss has filed a cross-motion for summary judgment, by which he essentially urges the Court to dismiss the United States' complaint.  (Doc. 42.)  Like the United States' motion, Goss's motion is fully briefed.  As with his response to the government's motion, Goss's motion is unsupported with any substantial evidence, and his assertions fly in the face of documentary evidence that the United States has offered to show that Goss has defaulted on loans that the United States holds and is entitled to enforce.  Accordingly, it will be recommended that Goss's cross-motion for summary judgment be denied.

2

illuminating nor relevant, and they provide no basis to deny the United States' motion to enforce its rights as a holder of notes that Goss has, for nearly two decades, failed to pay.

None of Goss's unsupported assertions are sufficient to defeat the government's motion, which is backed up by uncontroverted evidence that Goss executed promissory notes for the consolidated loans, that it holds the notes that Goss is obligated to repay, and that Goss has failed to make payment as he was required to do. Accordingly, the Court should enter judgment in favor of the United States and close the case.

## II.   **FACTUAL BACKGROUND**

Despite Goss's insistence otherwise, the facts of this case are simple. After taking out of a number of loans to finance his educational pursuits, in 1997, Goss applied to consolidate over $120,000 of educational loans through the William D. Ford Direct Loan Program. Goss's direct consolidation loan application and promissory notes were approved by the Department of Education, and loan proceeds for some, but not all, of Goss's loans were subsequently disbursed. Throughout the summer of 1997, the federal government processed Goss's applications, and in August 1997, Goss executed a Federal Direct Consolidation Loan Promissory Note identifying the loans being consolidated, including direct subsidized and

unsubsidized loans, for a total disbursed amount of $97,803.47. On August 19, 1997, Goss executed an additional Federal Direct Consolidation Loan Promissory Note in the amount of $16,855.05. (Doc. 37, Exs. 11, 12.) Since the disbursement of these loans, the United States Department of Education, which holds the notes for the consolidation loans, has not received any money in repayment from Goss over the past two decades. (Doc. 37, Exs. 24, 25, Declarations of Michael Illes, Loan Analyst.)

Instead, beginning in April 1998, and continuing through May 2004, Goss periodically and regularly sought forbearance on repayment of his federal student loans, at times confessing that he lacked the resources to make payment, while also advancing a wholly unsupported claim that he was not obligated to make any payments because there was an ongoing investigation into the handling of his loan consolidation application, which Goss suggested was somehow never completed despite undisputed evidence that the United States financed Goss's outstanding loans as part of the consolidation process and therefore became Goss's lender. (Id., Exs. 13-23.) Eventually, the Department of Education demanded payment according to the terms of the first note, and after receiving no payment, declared Goss to be in default on loans totaling $86,465.60 on February 15, 2008. (Id., Ex. 24.) Similarly, after demanding payment according to the terms of Goss's second consolidation loan

promissory note, the holder of that note declared Goss to be in default on loans totaling $20,000 on December 11, 2002.   The Pennsylvania Higher Education Assistance Agency (PHEAA), the guarantor on those loans, paid the lender and then turned to the United States Department of Education for reimbursement.   Thereafter, that debt was assigned to the Department of Education on September 15, 2008.  (Id., Ex. 25.)  It is undisputed that Goss has failed to make payment on these loans since they were disbursed.

Goss's obligation to repay the consolidated loans was clearly spelled out in the Direct Consolidation Promissory Notes that he executed.   Those notes state as follows:

> Section C: [First Paragraph Excerpts] I promise to pay to the U.S. Department of Education (ED) all sums (hereinafter "loan" or "loans") disbursed under the terms of this promissory note . . .
>
> [Second Paragraph Excerpts] I understand that the total amount of this loan may exceed the amounts listed above under Loan Consolidation if I do not continue to make monthly payments to my current loan holder(s) until the time I am notified that my Federal Direct Consolidation Loan has been made . . . .  I understand that I am obligated to repay these additional amounts under the terms of this Promissory Note.
>
> [Third Paragraph] I understand this is a Promissory Note. I will not sign this Promissory Note before reading it, including the text on the reverse side, . . . I am entitled to

> an exact copy of this Promissory Note and a statement of
> Borrower's Rights and Responsibilities.  My signature
> certifies that I have read, understand, and agree, to the
> terms and conditions of this Promissory Note, including the
> Borrower Certification and Authorization printed on the
> reverse side and the accompanying Borrower's Rights and
> Responsibilities.

(Doc. 37, Exs. 11, 12, Direct Consolidation Loan Promissory Notes, Section C.)  The

foregoing language thus obligated Goss to make payments on his direct consolidation

loans, and he was expressly instructed that he should continue to make payments on

the loans that were being consolidated until he received notice that the consolidation

had been finalized and his various loans had been paid off and were thus subject to

repayment in accordance with the notes that Goss executed.  The loan documents also

made clear to Goss that interest would accrue on the sums disbursed, and that interest

would be capitalized in the event of a default.  By executing the promissory notes,

Goss agreed to pay principal, interest, capitalized interest, fees and collection costs

that may be incurred in relation to the loans.  There is no dispute that despite signing

the notes, Goss has never made payment on them, and has long been in default on the

loans.  The government has submitted evidence showing that as a result of his

defaults, as the time this action was initiated, Goss owed the aggregate of $253,591.87 in principal and interest accrued through July 29, 2011.[2]

## III.   **STANDARD OF REVIEW**

The United States has moved for judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a).  Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., 702 F. Supp. 2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a

---

[2]  The United States has also demonstrated that interest on both notes would continue to accrue until judgment was entered, and that interest would further accrue following entry of judgment at the current rate, compounded annually, pursuant to 28 U.S.C. § 1961(b).  (Doc. 1, Complaint and Exs. A and B, Certificates of Indebtedness.)

7

sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence.  Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the Court must "consider

all evidence in the light most favorable to the party opposing the motion." <u>A.W. v.</u>
<u>Jersey City Pub. Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing
to disputed material issues of fact must show by competent evidence that such factual
disputes exist.  Further, "only evidence which is admissible at trial may be considered
in ruling on a motion for summary judgment." <u>Countryside Oil Co., Inc. v. Travelers</u>
<u>Ins. Co.</u>, 928 F.Supp. 474, 482 (D.N.J.1995).  This rule applies with particular force
to parties who attempt to rely upon hearsay statements to establish material issues of
fact which would preclude summary judgment.  With respect to such claims, it is
well-settled that:  "In this circuit, hearsay statements can be considered on a motion
for summary judgment [only] if they are capable of admission at trial." <u>Shelton v.</u>
<u>University of Medicine & Dentistry of N.J.</u>, 223 F.3d 220, 223, n.2 (3d Cir. 2000),
citing <u>Stelwagon Mfg. v. Tarmac Roofing Sys., Inc.</u>, 63 F.3d 1267, 1275, n.17 (3d
Cir. 1995).  In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a
> court may only consider evidence which is admissible at trial, and that
> a party can not rely on hearsay evidence when opposing a motion for
> summary judgment. <u>See</u> <u>Buttice v. G.D. Searle & Co.</u>, 938 F.Supp. 561
> (E.D.Mo.1996).    Additionally, a party must respond to a hearsay
> objection by demonstrating that the material would be admissible at trial
> under an exception to hearsay rule, or that the material is not hearsay.
> <u>See</u> <u>Burgess v. Allstate Ins. Co.</u>, 334 F.Supp.2d 1351 (N.D.Ga.2003).
> The mere possibility that a hearsay statement will be admissible at trial,

does not permit its consideration at the summary judgment stage. <u>Henry v. Colonial Baking Co. of Dothan</u>, 952 F.Supp. 744 (M.D.Ala.1996).

<u>Bouriez v. Carnegie Mellon Univ.</u>, No. 02-2104, 2005 WL 2106582,* 9 (W.D. Pa. Aug. 26, 2005).  Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment.  Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate.  <u>See, e.g.</u>, <u>Synthes v. Globus Medical, Inc</u>., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); <u>Bouriez v. Carnegie Mellon Univ.</u>, No. 02-2104, 2005 WL 2106582,* 9 (W.D. Pa. Aug. 26, 2005); <u>Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc.</u>, 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." <u>Thimons v. PNC Bank, NA</u>, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted).  Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." <u>Fireman's Ins. Co. Of Newark NJ v. DuFresne</u>, 676 F.2d 965, 968 (3d Cir. 1982), <u>see</u> <u>Sunshine Books, Ltd. v. Temple University</u>, 697 F.2d 90, 96 (3d Cir. 1982)."  [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the

veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. Under the Local Rules, the failure to follow these instructions and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to go

beyond the pleadings and by her own affidavits, or by the depositions,
answers to interrogatories, and admissions on file, *designated specific
facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324
(1986) (internal quotations omitted) (emphasis added).

Doe v. Winter, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa.

Apr. 5, 2007) (parallel citations omitted; court's emphasis).  A party cannot evade

these litigation responsibilities in this regard simply by citing the fact that he is a *pro*

*se* litigant.  These rules apply with equal force to all parties.  See Sanders v. Beard,

No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se*

parties "are not excused from complying with court orders and the local rules of

court"); Thomas v. Norris, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11

(M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil

Procedure).

## IV.  **DISCUSSION**

The United States has the burden of proof on its promissory note claims in this

case, but it is a straightforward process with respect to what must be proven in order

to prevail on these claims.  In order to recover on a promissory note for student loans,

the government simply must come forward with evidence to show "(1) the defendant

signed [the note], (2) the government is the present owner or holder, and (3) the note

is in default."  United States v. Considine, No. 3:06-cv-6118-FLW, 2008 WL

4723030, at *2 (D.N.J. Oct. 24, 2008) (citing United States v. Hargrove, No. 06-1059, 2007 WL 2811832, at *2 (E.D. Pa. Sept. 24, 2007)); see also United States v. Lawrence, 276 F.3d 193, 197 (5th Cir. 2001).   Where this showing has been made, the government is entitled to judgment as a matter of law.   See Considine, 2008 WL 4723030, at *2; Hargrove, 2007 WL 2811832, at *2 (finding that the government was entitled to judgment as a matter of law where it provided copies of the borrower's promissory notes, and documentation showing that the Department of Education was the holder of the defaulted loans).

The United States has produced copies of both of the promissory notes that Goss signed in 1997.  (Doc. 37, Exs. 11, 12.)  The United States has further provided declarations of Michael Illes, a loan analyst with the United States Department of Education, verifying that with respect to the promissory note that Goss executed on or about May 6, 1997, to secure a Direct Consolidation Loan from the United States Department of Education, the loan was disbursed and paid under the William D. Ford Federal Direct Loan Program, that the Department of Education demanded payment according to the terms of the note, and that Goss defaulted on the obligation on February 15, 2008.  (Id., Exs. 24.)  Mr. Illes offered a second declaration with respect to the loans that Goss took out in 1989, 1990, and 1991 that were guaranteed by PHEAA and reinsured by the Department of Education.  Mr. Illes attested that after

Goss defaulted on these loans PHEAA paid off the loans, and then sought reimbursement from the Department of Education, which satisfied this debt. The Department of Education took assignment of this loan on September 15, 2008, and has received no payments against the balance owed. (Id., Ex. 25.)

Thus, the United States has presented the notes, has verified that the Department of Education is the holder of the notes, and has shown that the notes are in default. In the absence of any evidence to dispute the facts and evidence that the United States has proffered, summary judgment is warranted. A review of the record reveals that there is no genuine dispute at all regarding the facts of this case, because Goss has done nothing to contest the evidence in any meaningful way.

Goss does not dispute that he borrowed a substantial amount of student loans, or that he sought to consolidate those loans, or that he has never paid the loans. Instead, in prolix, repetitive and frequently confusing briefs, Goss maintains that he has no obligation to repay the loans at this time – or, indeed, at any point over the past 18 years – because of some unspecified administrative mistakes that he claims were made during the consolidation process. Goss even suggests that the consolidation of his student loans was never completed, or was never finalized in a way that he approved of, and he repeatedly insists that some unidentified person in a "research department" at Direct Loan Service or another servicing agency told Goss that there

was an ongoing investigation into the alleged unspecified problems with Goss's loan consolidation, and that Goss was, therefore, privileged to refrain from repaying his loans while this process was completed.  Goss provides no competent evidence to support this claim, and offers no actual evidence to discredit the documents that the Department of Education has produced showing that Goss signed two promissory notes attesting to his obligation to repay two consolidated loans, and yet has failed to pay on them at any time.

Goss also suggests that somehow it is he who is the victim here, not the United States, which extended loans on his behalf that have never been repaid.  Thus, in a dramatic but wholly unpersuasive fashion, Goss urges the Court to embrace his unsupported claim that he has suffered "horrific, inexcusable, and unjust" treatment as a result of a "failed consolidation" – but there is simply nothing to support Goss's characterization of the consolidation process aside from his own repeated assertions, all of which strain credulity, and many of which are extremely difficult to understand. Goss's briefs are a tangle of repetitive assertions that make little sense.  For example, in one of his briefs, Goss offers "additional statements of material facts" that include "commentary providing a perspective as relates to the presented documentation, which simply goes to bolster and be supportive-to the previously established concerns-for, and the identification-of Inaction/Improper Servicing of my Account

Issues."  What this signifies is never made clear in Goss's filings.  At another point,

Goss explains in apparent circular fashion that "these [unspecified and unexplained]

administrative errors were initiated by inappropriate actions and reactions and left

unattended-to through this date, eighteen (18) years later, **via blatant outright and**

**blatant inaction**."  (Doc. 53, at 4) (original emphasis.)

The Court will not recite all of Goss's arguments, but notes that in many places,

Goss's briefs rely on similar opaque assertions regarding a slew of errors that Goss

claims infected his loan consolidation and absolved him of any responsibility for his

debts.  Thus, by way of another example, rather than explain how he can be excused

from defaulting on promissory notes that he signed, Goss concludes one string of

allegations in typically perplexing and emphatic fashion that "**BUT, and ONCE**

**AGAIN, these account issues beyond being merely ALLUDED-TO, have NEVER**

**in all of eighteen (18) years from 1997 through this date in time, have never been**

**explained  have  never  been  properly  attended-to,  and  in  essence,  they  have**

**NEVER been properly Identified, Rectified, nor Resolved.  NOT THEN, NOT**

**THROUGH NOW, AND NOT EVER (PERIOD)**."  (Id. at 6-7.)  While Goss is

insistent that the consolidation of his loans was mishandled, or that there were

administrative errors by a loan servicer at some time, he provides no evidence to

dispute that his loans were, in fact, consolidated; that substantial disbursements were

16

made on his behalf; and that he signed promissory notes unequivocally promising to pay the indebtedness incurred through the consolidation process and yet has never done so.

Goss' pleadings, which substitute emphatic punctuation for coherent analysis, also demonstrate a penchant for obfuscation of the relevant issues.  In fact, Goss argues unconvincingly that somehow it is he who is the victim in this case, suggesting that the consolidation of his loans was akin to "terroristic-abuse" that has severely impaired his credit and his attempts to establish a chiropractic business.  (Id. at 11-12.)  There is a clear, but clearly unintended, irony to this argument.  Goss has borrowed more than $100,000.  He has never repaid a cent of this money over the past 20 years.  These decades of delinquencies have now damaged his credit, and Goss incredibly blames those who have waited for decades for repayment of this debt for the injury to his credit which his conduct has caused.  Since Goss does not dispute that he took out substantial student loans, and seems to acknowledge that he has never paid these loans back, it is apparent that Goss's credit problems can be attributed to his own failure to pay his debts rather than to some alleged mishandling of his loan consolidation nearly two decades ago.  Moreover, the documents that Goss has appended to his briefs simply do not support his assertions regarding administrative

errors, nor do they do anything to support the notion that Goss was relieved from having to pay his debts in accordance with the notes that he signed.

Over the past two decades and throughout his briefs, Goss simply ignores the documentary evidence showing the indebtedness that he incurred, his own requests to consolidate his loans, the fact that his loans were consolidated, and the clear and unequivocal language of the promissory notes that he executed attesting to his agreement to repay the substantial student loans that were made on his behalf. Instead, Goss tries in vain to suggest that he was privileged to disregard his repayment obligations as a result of administrative errors that were made during the course of his loan consolidation.  The documents that Goss relies on to support these notions are both spare and entirely unsupportive of his confusing factual narrative and the legal conclusions he attempts to tease from them; to the contrary, the documents that Goss submits show that he had sought to be relieved from paying interest during a certain period shortly after he applied to consolidate his loans, and his request was denied for reasons that were clearly explained to him.  (Doc. 53, Exhibits.)  Goss's idiosyncratic interpretation of these materials does nothing to create a disputed issue of material fact, and provides no support for his defenses to the United States' collection efforts.

Moreover, the plain language in the promissory notes themselves obligated Goss to make payments, and this contractual obligation is not somehow nullified by a conversation that Goss claims to have had with an unnamed person at a loan servicing company about alleged administrative errors with the consolidation process. This argument is the lynchpin of Goss' defense; rests upon the hearsay assertions of an unnamed declarant and fails as a matter of law for at least three reasons.

First it fails as a matter of contract law.  The promissory notes signed by Goss are clear and unambiguous agreements that required Goss to continue pay his student loan debts even if loan consolidation requests were pending.  As a matter of contract law, Goss is bound by the unambiguous terms of these written agreements which he signed.  <u>Kroblin Refrigerated Xpress, Inc. v. Pitterich</u>, 805 F.2d 96, 108 (3d Cir. 1986).  Nor can Goss simply avoid his obligations under the clear written agreement by attempting to inject into this litigation some claimed parol modification of the written agreement, a parol modification that would have fundamentally changed his agreement with the United States and allowed him to perpetually enjoy the benefit of these loans without any repayment obligation.  This argument fails because under settled contract law "the written contract, [once found to be] unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements, or other

19

writings, are admissible to explain or vary the terms of the contract." <u>Rahemtulla v.</u>

<u>Hassam</u>, 539 F. Supp. 2d 755, 773 (M.D. Pa. 2008).

Second, Goss' argument fails as a matter of the laws of evidence.  Goss'

defense to this loan repayment rests on an ephemeral pillar, an alleged hearsay

assertion by an unidentified declarant who Goss claims completely absolved him

from repaying his loans.  Indeed, as characterized by Goss, this hearsay declaration

appears to be a complete defense to any claim by the United States a defense which

Goss alleges can only be revoked by another similar hearsay declaration.  As we

understand it, Goss seems to allege that the hearsay declarant also instructed him to

ignore any other written or oral instruction he might receive from the holders of his

promissory note demanding repayment.  In Goss' view this single, hearsay declaration

trumps all of the other evidence in this case.

Goss is wrong.  This assertion, while convenient, is rank hearsay.  As such, it

not competent evidence.  Further, "only evidence which is admissible at trial may be

considered in ruling on a motion for summary judgment." <u>Countryside Oil Co., Inc.</u>

<u>v. Travelers Ins. Co.</u>, 928 F.Supp. 474, 482 (D.N.J.1995).  This rule applies with

particular force to parties, like Goss, who attempt to rely upon hearsay statements to

establish material issues of fact which would preclude summary judgment.  With

respect to such claims, it is well-settled that:  "In this circuit, hearsay statements can

be considered on a motion for summary judgment [only] if they are capable of admission at trial." <u>Shelton v. University of Medicine & Dentistry of N.J.</u>, 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing <u>Stelwagon Mfg. v. Tarmac Roofing Sys., Inc.</u>, 63 F.3d 1267, 1275, n.17 (3d Cir. 1995).  Since Goss' hearsay assertions simply do not meet this minimal threshold of evidentiary integrity, they provide no defense to this action, and may not be relied upon to defeat the government's summary judgment motion.

Finally, Goss' claim rests upon an erroneous legal premise, the notion that alleged student loan processing errors can completely absolve him of his liability to pay his debts under the written promissory notes that he executed.  On this score Goss is simply mistaken.  Indeed, courts have rejected this precise argument, noting that a student loan borrower may not assert loan consolidation and processing disputes as a complete defense to repayment of loans under the terms of an unambiguous promissory note. <u>United States v. Romero</u>, 562 F. App'x 943, 949 (11th Cir. 2014)("Romero argues about which loans were included in the consolidated loan, and how much is due on that loan.  However, the U.S. government seeks to recover the principal and interest based on the 1992 promissory note and the addendum, both of which Romero signed.  Romero agreed to repay the amounts stated on the faces of those documents, and we do not delve into the issue of what the basis of that

agreement was.  The record makes clear that the U.S. government is entitled to enforce the terms of the 1992 consolidated graduate loan.")

Simply put, Goss' defense to this loan collection action conflates unintelligible arguments, inadmissible evidence, and unbelievable claims in a wholly unpersuasive fashion.  Therefore, this defense is no defense and Goss must repay his long delinquent debts as he had once promised in writing to do.  In sum, the United States has carried its burden of proving that Goss signed the promissory notes in question, that the Department of Education is the present holder of the notes, and that the notes are in default.  Based upon this undisputed evidentiary showing, the United States has satisfied its burden, and is entitled to judgment as a matter of law.

## IV.   <u>RECOMMENDATION</u>

Accordingly, for the foregoing reasons, it is hereby recommended that the United States' motion for summary judgment (Doc. 37.) be GRANTED and that Jerry Goss's cross-motion for summary judgment (Doc. 42.) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the

proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 9th day of April, 2015.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge